ORAL ARGUMENT SCHEDULED FOR MAY 14, 2026
Nos. 25-5241, 25-5265, 25-5277 & 25-5310 (Consolidated)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

PERKINS COIE LLP, *Plaintiff-Appellee*,
v.
U.S. DEPARTMENT OF JUSTICE, et al., *Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Columbia

**Nos. 1:25-cv-00716 (BAH), 1:25-cv-00916 (JDB),
1:25-cv-00917 (RJL), 1:25-cv-01107 (LLA)**

**BRIEF OF *AMICI CURIAE* PIONEER NEW ENGLAND LEGAL
FOUNDATION AND PACIFIC LEGAL FOUNDATION IN SUPPORT OF
PLAINTIFFS-APPELLEES AND AFFIRMANCE**

Sara Jane Shanahan*
John C. La Liberte
Thomas Paul Gorman
Daniel S. Guenther
SHERIN AND LODGEN LLP
One Lincoln Street, 14th Floor
Boston, MA  02111
(617) 646-2000
sjshanahan@sherin.com

April 2, 2026                                    *Counsel of Record

*Attorneys for* Amici Curiae *Pioneer New England Legal
Foundation and Pacific Legal Foundation*

4911-8511-2988

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned certifies as follows:

### Parties and *Amici*

Except for Union Internationale des Avocats, European Bar Associations, International Bar Association Human Rights Institute, Commonwealth Lawyers Association, American Bar Association, Washington Legal Foundation, Former Presidents of The Energy Bar Association, 1224 Law Students and 50 Law Student Organizations, Members of Congress, National Security Counselors, Inc., and the Western Center on Law and Poverty, all known parties and as-filed *amici* are listed in the certificates in the Defendants-Appellants' and Plaintiffs-Appellees' briefs.

### Rulings Under Review

References to the rulings at issue appear in the Appellees' Briefs filed March 27, 2026.

### Related Cases

Counsel adopt and incorporate by reference the parties' statements with respect to related cases.

Dated: April 2, 2026

*/s/ Sara Jane Shanahan*
Sara Jane Shanahan

*Counsel for* Amici Curiae
*Pioneer New England Legal*
*Foundation and Pacific Legal*
*Foundation*

ii

4911-8511-2988

## CORPORATE DISCLOSURE STATEMENT

*Amici curiae* PioneerLegal, LLC, doing business as Pioneer New England Legal Foundation (Pioneer NELF) and Pacific Legal Foundation (PLF), through their undersigned counsel, submit this Corporate Disclosure Statement pursuant to Federal Rules of Appellate Procedure 26.1(a) and 29(a)(4)(A), as well as Rule 26.1(a) of the Circuit Rules of the United States Court of Appeals for the District of Columbia Circuit.

Pioneer NELF is a nonprofit, nonpartisan legal research and litigation entity, with its headquarters in Boston, Massachusetts. Pioneer NELF does not issue stock or any other form of securities. As a limited liability company, Pioneer NELF has a sole member, which is the Pioneer Institute, Inc., a nonprofit, nonpartisan Massachusetts corporation. Pioneer NELF is governed by a self-perpetuating Board of Directors, the members of which serve solely in their personal capacities.

PLF is a nonprofit tax-exempt California corporation that was established in 1973, for the purpose of litigating matters affecting the public interest.

*Amici curiae* are represented herein by Sara Jane Shanahan, counsel of record, of Sherin and Lodgen LLP, One Lincoln Street, 14th Floor, Boston, MA 02111.

iii

4911-8511-2988

All parties have consented to the filing of this amicus brief.

Dated: April 2, 2026
/s/ Sara Jane Shanahan
Sara Jane Shanahan

Counsel for Amici Curiae
Pioneer New England Legal
Foundation and Pacific Legal
Foundation

# CERTIFICATE REGARDING SEPARATE BRIEFING

Pursuant to D.C. Circuit Rule 29(d), counsel for A*mici* certifies that a separate brief is necessary to express the views of private, non-profit public interest law firms.  Private and non-profit public interest law firms are powerful agents of change in public policy, society, and the law.  *Amici* are especially well-suited to address the questions presented on these consolidated appeals in light of their history of serving as advocates on questions of public importance for many decades, on countless topics, across numerous political administrations.

Dated:  April 2, 2026

*/s/ Sara Jane Shanahan*
Sara Jane Shanahan

*Counsel for* Amici Curiae
*Pioneer New England Legal Foundation and Pacific Legal Foundation*

v

4911-8511-2988

**TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............ ii

CORPORATE DISCLOSURE STATEMENT ........................................ iii

CERTIFICATE REGARDING SEPARATE BRIEFING............................v

TABLE OF CONTENTS........................................................ vi

TABLE OF AUTHORITIES ................................................... vii

IDENTITY AND INTERESTS OF *AMICI*.......................................1

INTRODUCTION ..........................................................4

ARGUMENT ..............................................................5

I.    The Executive Orders Impede The Adversarial System Of Justice ...............5

II.   The Executive Orders Impair Individual Rights ............................8

III.  The Executive Orders Undermine The Structure Of The Constitution And Our Democracy.........................................................9

CONCLUSION..........................................................13

CERTIFICATE OF COMPLIANCE.......................................15

CERTIFICATE OF SERVICE .............................................16

4911-8511-2988

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Ass'n of Univ. Professors v. Rubio*,
  802 F. Supp. 3d 120 (D. Mass. 2025)....................................................................7

*Barron v. Kolenda*,
  203 N.E.3d 1125 (Mass. 2023)..............................................................................6

*Boddie v. Connecticut*,
  401 U.S. 371 (1971) ...............................................................................................4

*Cedar Point Nursery v. Hassid*,
  594 U.S. 139 (2021) ...............................................................................................6

*Chambers v. Baltimore & Ohio R. Co.*,
  207 U.S. 142 (1907) ...............................................................................................4

*Greenlaw v. United States*,
  554 U.S. 237 (2008) ...............................................................................................8

*Knick v. Twp. of Scott, Pennsylvania*,
  588 U.S. 180 (2019) ...............................................................................................6

*Liu v. SEC*,
  591 U.S. 71 (2020) .................................................................................................6

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024) ...............................................................................................6

*Penson v. Ohio*,
  488 U.S. 75 (1988) .................................................................................................7

*Perry v. Leeke*,
  488 U.S. 272 (1989) ...............................................................................................7

*Reagan v. Comm'r of Revenue*,
  203 N.E.3d 1150 (Mass. 2023)..............................................................................6

*SEC v. Jarkesy*,
  603 U.S. 109 (2024) ...............................................................................................6

*Tyler v. Hennepin Cnty., Minnesota*,
   598 U.S. 631 (2023) ................................................................6

*U.S. Auto Parts Network Inc. v. Comm'r of Revenue*,
   199 N.E.3d 840 (Mass. 2022).................................................6

*United States v. Samuels*,
   808 F.2d 1298 (8th Cir. 1987).................................................8

*Vita v. New England Baptist Hosp.*,
   243 N.E.3d 1185 (Mass. 2024)................................................6

## Other Authorities

1 ALEXIS DE TOCQUEVILLE, DEMOCRACY IN AMERICA 440 (Eduardo Nolla ed.,
   James T. Schleifer trans., Liberty Fund 2010) (1835) (chapter 8, "Of the Spirit of
   the Jurist in the United States, and How It Serves as Counterweight to
   Democracy")…...............................................................12

2 ALEXIS DE TOCQUEVILLE, DEMOCRACY IN AMERICA 1260-61 (Eduardo Nolla ed.,
   James T. Schleifer trans., Liberty Fund 2010) (1835) (Part IV, chapter 6, "What
   Type of Despotism Democratic Nations Have to Fear"). ....................................13

Robert A. Katzmann, *Foreword to* R. GRANFIELD & L. MATHER, PRIVATE
   LAWYERS AND THE PUBLIC INTEREST: THE EVOLVING ROLE OF PRO BONO IN THE
   LEGAL PROFESSION, at p. ix (1st ed., 2009)..........................................4

THE FEDERALIST NO. 51, at 352 (James Madison) (Cooke ed., 1961) ........... 4, 9, 10

THE FEDERALIST NO. 78, at 523 (Alexander Hamilton) (Cooke ed., 1961) ... 5, 9, 11

4911-8511-2988

### IDENTITY AND INTERESTS OF *AMICI*[1]

Pioneer New England Legal Foundation (Pioneer NELF), formerly known as PioneerLegal LLC, is a nonprofit, nonpartisan legal research and litigation entity.  Pioneer NELF began operating under its new name after a strategic alliance with New England Legal Foundation in May 2025, and seeks to continue its own work and the mission of the New England Legal Foundation.

PioneerLegal LLC was founded by its nonprofit member, the Pioneer Institute, Inc., in 2022, in order to promote open and accountable government, economic opportunity, freedom of speech, freedom of association, and education opportunities across the country through legal action and public education.

The New England Legal Foundation (NELF) has been a nonprofit, public interest law foundation, which was incorporated in Massachusetts in 1977. NELF's members and supporters have included large and small businesses in New England, other business and nonprofit organizations, law firms, and individuals, all of whom believe in NELF's mission of promoting balanced economic growth in

---

[1]  Pursuant to D.C. Cir. Rule 29(a), counsel for *Amici* represents that all parties have consented to the filing of this brief.  Pursuant to Fed. R. App. P. 29, counsel for *Amici* states that no party's counsel authored the brief in whole or in part, nor did a party or a party's counsel contribute money that was intended to fund preparing or submitting the brief, nor did any person – other than the *Amici curiae* and their counsel – contribute money that was intended to fund preparing or submitting the brief.

4911-8511-2988

New England, protecting the free enterprise system, and defending economic and property rights.

Pacific Legal Foundation (PLF) is a non-profit, nonpartisan public-interest law firm dedicated to advancing the principles of liberty and limited government in court.  It has brought civil lawsuits against every federal administration, both Republican and Democrat, since its founding in 1973.  PLF provides a voice in the courts for Americans who believe in limited constitutional government, private property rights, and individual freedom.  PLF is the most experienced public-interest legal organization defending the constitutional principle of separation of powers in the arena of administrative law.

*Amici* have a strong interest in advocating for the Court of Appeals to uphold the district court judgments enjoining enforcement of the executive orders targeting the four law firms.  While the four law firms focus segments of their practices on public interest and *pro bono* litigation, *Amici* have for many years focused their work exclusively on litigating and advocating for the principles of limited government.  If the President, via executive order, were able to punish lawyers and law firms for championing issues that the President disfavors, then *Amici* could be permanently harmed for running afoul of one President's policy preferences.  This would be detrimental not only to *Amici* and their supporters, but to the freedom of all Americans.

2

4911-8511-2988

Private and non-profit public interest law firms are powerful agents of change in public policy, society, and the law.  Such firms are involved in many of the same issues addressed by government agencies, but in a private, usually non-profit law firm setting.  There is no official test for what establishes a firm as a public interest law firm.  It devotes its caseload to matters that have broad social, political, or economic impact.  While most are small, firms that fall under this broad definition come in a great variety of sizes and work in an even broader range of subject areas, such as education law, election law, consumer protection, environmental law, criminal defense, and international human rights.

While public interest law firms share the same core ethical and legal obligations as traditional law firms, their focus on serving underrepresented populations and pursuing specific social, political, or economic visions leads to differences in client selection, billing practices, and case priorities.  Public interest firms may prioritize cases based on their impact on a particular cause or community, even if the case is not financially lucrative.

The justice system relies on public interest lawyers, and any executive action that threatens their very survival would do great harm to both citizens and the courts.  One of the nation's leading federal jurists expressed it as follows:

> "[m]y experience on the federal appellate court has only reinforced my view that pro bono lawyering can vitally support the fair administration of justice.  In many cases, pro bono lawyers have aided the Court, as

3

well as their clients, in presenting worthy arguments that aid us in resolving cases."

Robert A. Katzmann, *Foreword to* R. GRANFIELD & L. MATHER, PRIVATE LAWYERS AND THE PUBLIC INTEREST: THE EVOLVING ROLE OF PRO BONO IN THE LEGAL PROFESSION, at p. ix (1st ed., 2009).

## INTRODUCTION

"Justice is the end of government. It is the end of civil society. It ever has been and ever will be pursued until it be obtained, or until liberty be lost in the pursuit." THE FEDERALIST NO. 51, at 352 (James Madison) (Cooke ed. 1961). A lawyer's ability to advocate on behalf of a client in state and federal courts in the United States of America is a fundamental component of our justice system. Access to the courts, in the form of lawsuits, is a form of free speech. Indeed, the right to sue and defend in court is one of the highest and most essential privileges of persons in the United States. *See Chambers v. Baltimore & Ohio R. Co.*, 207 U.S. 142, 148 (1907); *Boddie v. Connecticut*, 401 U.S. 371, 374-75 (1971). The government's effort to discourage lawsuits of which the current executive disapproves, by punishing the lawyers who litigate those cases, is an unlawful and unconstitutional suppression of free speech, in the form of viewpoint discrimination. If the challenged executive orders in the four underlying cases were allowed to stand, the precedent would jeopardize the ability of *Amici*, and any other litigant, to seek redress in the courts from unlawful government infringement on individual rights. Such an outcome cannot be abided, as it has been recognized

4

from before the founding of this country that "there is no liberty if the power of judging be not separated from the legislative and executive powers." THE FEDERALIST NO. 78, at 523 (Alexander Hamilton) (Cooke ed. 1961) (quoting MONTESQUIEU, SPIRIT OF LAWS, Vol. I, p. 181).  If litigants cannot reach the courts, then judges cannot fulfill their duty of "declar[ing] all acts contrary to the manifest tenor of the Constitution void."  THE FEDERALIST NO. 78, at 524 (Alexander Hamilton) (Cooke ed., 1961).  For the sake of our collective freedom, the judgments and permanent injunctions entered below must be affirmed.

## ARGUMENT

**I.     THE EXECUTIVE ORDERS IMPEDE THE ADVERSARIAL SYSTEM OF JUSTICE**

The executive orders targeting the four private law firms are unconstitutional on their face, and the injunctions barring their enforcement should be upheld.  A contrary result would inevitably chill all advocates – even those with whom the executive may agree.  Such an outcome would damage, if not destroy, the truth-seeking function of our adversarial justice system.  As the founders recognized, the courts are best able to resolve questions of law and fact when advocates for both sides are free to present their strongest case.  If lawyers are punished for doing this work on behalf of their clients, then they will be coerced into allowing the government free rein, regardless of the law, and they will avoid pursuing cases that challenge government action.

5

4911-8511-2988

*Amici* find their *raison d'etre* in representing clients and *amicus* causes in favor of the principles of limited government. In the tradition of the American colonists, *Amici* have long raised the flag of "Don't Tread on Me," and they have filed briefs that inform state and federal courts on matters of government intrusion and public policy. In recent years, *Amici* have challenged unconstitutional takings (*see Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631 (2023); *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021); *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180 (2019)), advocated for the right to a jury trial in prosecutions by the SEC pursuant to the Dodd-Frank Act (*see SEC v. Jarkesy*, 603 U.S. 109 (2024)), challenged the delegation of judicial authority to administrative agencies (*see Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)), objected to punitive disgorgements as improper use of equitable power by the Courts (*see Liu v. SEC*, 591 U.S. 71 (2020)), challenged application of the Massachusetts Wiretap Act of 1968 to collection of user browsing data on public webpages (*see Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185 (Mass. 2024)), opposed so-called civility codes governing public participation in town meetings as violative of free speech rights protected by the Massachusetts Constitution (*see Barron v. Kolenda*, 203 N.E.3d 1125 (Mass. 2023)), and challenged overreaching by taxing authorities (*see U.S. Auto Parts Network Inc. v. Comm'r of Revenue*, 199 N.E.3d 840 (Mass. 2022); *Reagan v. Comm'r of Revenue*, 203 N.E.3d 1150 (Mass. 2023)).

4911-8511-2988

Zealous advocacy in such cases is critical to bringing to light major issues of concern to the populace, for decision by the courts. "The paramount importance of vigorous representation follows from the nature of our adversarial system of justice. This system is premised on the well-tested principle that truth – as well as fairness – is 'best discovered by powerful statements on both sides of the question.'" *Perry v. Leeke*, 488 U.S. 272, 291 (1989) (Marshall J., dissenting) (quoting *Penson v. Ohio*, 488 U.S. 75, 84 (1988)).

However, if an executive who opposes certain causes or outcomes were able to shutter *Amici*, the four Plaintiff law firms, and all other disfavored lawyers throughout the country, by barring them from federal courts, inhibiting clients and parties from seeking advice, or otherwise blocking *Amici* from fundraising (which, as not-for-profit entities, is their sole source of revenue through which to conduct operations), then the adversarial system will be enfeebled.[2] Any challenges to government action that *Amici* or other advocates might wish to raise would be thwarted before the questions could even be raised in court.

---

[2] The reasoning of the underlying consolidated cases has already been recognized as persuasive by other federal district courts. *See, e.g.*, *Am. Ass'n of Univ. Professors v. Rubio*, 802 F. Supp. 3d 120, 197–98 (D. Mass. 2025) ("The President's palpable misunderstanding that the government simply cannot seek retribution for speech he disdains poses a great threat to Americans' freedom of speech. It is at this juncture that the judiciary has robustly rebuffed the President and his administration.") (citing the district court orders considered on this appeal, as well as cases barring retribution against higher education and the media).

"[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do, and this must be particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before us."

*Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987)).

## II.  THE EXECUTIVE ORDERS IMPAIR INDIVIDUAL RIGHTS

The loss of such advocacy challenging the actions of government, the "richest, most powerful, and best represented litigant" to appear in court, matters to *all* Americans – those who favor free markets and those who favor market regulation; those who favor limited government and those who favor expansive government. The core premise of living in a free society – one governed by laws and not men – is that individuals may speak without fear of punishment from the government simply for voicing disfavored sentiments. The remedy for disfavored speech is more speech. It is not prison. It is not virtual handcuffs. It is not the loss of one's livelihood at the whim of the government. If the executive can silence one group today through coercion and blackballing, then it will just as easily be able to silence a different group tomorrow. "Considerate men of every description ought to prize whatever will tend to beget or fortify that temper in the courts; as no man can be sure that he may not be tomorrow the victim of a spirit of injustice, by

8

which he may be the gainer today." THE FEDERALIST NO. *78*, at 528 (Alexander Hamilton) (Cooke ed., 1961).

By allowing all voices to speak freely, each of us can advocate for policies and positions we favor and attempt to persuade our neighbors, and all branches of government, of the wisdom and superiority of our ideas. But just as the government cannot tell us which, if any, religion to follow, it must not interfere with a lawyer's ability to advocate for a client or a client's ability to engage a lawyer for a cause. Again, the founders recognized this principle from the start: "In a free government the security for civil rights must be the same as that for religious rights." THE FEDERALIST NO. 51, at 351 (James Madison) (Cooke ed., 1961).

### III. THE EXECUTIVE ORDERS UNDERMINE THE STRUCTURE OF THE CONSTITUTION AND OUR DEMOCRACY

In addition to interfering with the personal liberties of citizens who seek redress in the courts under the rights enumerated by the Bill of Rights, the conduct of the executive to interfere with the ability of lawyers to take on cases and causes does serious violence to the very structure of the Constitution. The Constitution includes a carefully crafted series of checks and balances on the power of each branch. Checks on the judicial power are provided to both political branches. Foremost among the executive powers is the nomination of Supreme Court and other federal judges. The President also has the power to grant pardons, undoing a

4911-8511-2988

criminal conviction overseen by the federal court.  Moreover, the doctrine of executive privilege limits judicial oversight of the President.  And while judicial budgets are set by Congress, the President has the power to veto that budget.  Congress has the power to confirm judicial nominees, to impeach judges, to limit federal court jurisdiction, to withhold funding, and to initiate Constitutional amendments that overrule judicial rulings.  Noticeably absent from these checks on the judiciary is the power of either political branch to impair the judicial process by silencing members of the bar.  Such conduct is an unjustified assault on the very essence of the principle of the separation of powers.

In *Federalist 51*, James Madison stressed that the best way to control the national government was to harness the political ambitions of each branch, and to use each branch to check the ambitions of the other branches.  As Madison emphasized: "But the great security against a gradual concentration of the several powers in the same department consists in giving to those who administer each department the necessary constitutional means and personal motives to resist encroachment of the others."  THE FEDERALIST NO. 51, at 349 (James Madison) (Cooke ed., 1961).

If judges, duly appointed through our constitutionally established processes and bound by the law and the Constitution, disagree with a legal argument, they can reject it.  If elected lawmakers disagree with a policy, they can pass new laws

4911-8511-2988

and fund or de-fund programs.  If an executive is displeased with the advocacy of a law firm or its lawyers, it may retain its own lawyers to argue an opposing position.  What the executive cannot do is block all others from engaging a firm and seeking its lawyers' advice.  That would be an impairment of rights guaranteed by the First, Fifth, and Sixth Amendments of the United States Constitution – freedom of speech, freedom of association, the right to petition, due process of law, and the right to counsel.  Four district court judges, in hundreds of pages of analysis, have detailed the legal reasoning and constitutional principles supporting this conclusion.  In doing so, they have fulfilled their constitutional role in maintaining the balance of powers.

Alexander Hamilton also recognized the critical role of an *independent* judiciary in preserving these freedoms:

> For I agree that 'there is no liberty if the power of judging be not separated from the legislative and executive powers.'  And it proves, in the last place, that as liberty can have nothing to fear from the judiciary alone, but would have everything to fear from its union with either of the other departments …. Limitation of this kind [from ex post facto laws, bills of attainder, and the like] can be preserved in practice no other way than through the medium of courts of justice, whose duty it must be to declare all acts contrary to the manifest tenor of the Constitution void.  Without this, all the reservations of particular rights or privileges would amount to nothing.

THE FEDERALIST NO. 78, at 523-24 (Alexander Hamilton) (Cooke ed., 1961) (citation omitted).

11

In *Democracy in America*, which Alexis de Tocqueville wrote following his travels in America in the 1830's, the author similarly reflected on the critical role of an independent judiciary in maintaining our democratic systems and freedoms:

> Armed with the right of declaring laws unconstitutional, an American magistrate enters constantly into public affairs. He cannot force the people to make laws, but at least he compels them not to be unfaithful to their own laws and to remain consistent. I am not unaware that a secret tendency exists in the United States that leads the people to reduce the judicial power …. I dare to predict that sooner or later these innovations [election of judges] will have harmful results and that one day you will see that by diminishing the independence of the magistrates in this way you have attacked not only the judicial power but also the democratic republic itself.

1 ALEXIS DE TOCQUEVILLE, DEMOCRACY IN AMERICA 440 (Eduardo Nolla ed., James T. Schleifer trans., Liberty Fund 2010) (1835) (chapter 8, "Of the Spirit of the Jurist in the United States, and How It Serves as Counterweight to Democracy").

While *Amici* may not always agree with the positions taken by the four law firm Plaintiffs and their clients, we stand in staunch favor of the firms' right to associate with clients of their choice and to advocate before the courts for the issues that they and their clients – not anyone else – decide are worthy of championing.

12

**CONCLUSION**

The Constitution provides for the courts to enforce the freedoms protected by the Bill of Rights, as the district court has done in the cases brought by the four law firm Plaintiffs. The Court of Appeals should affirm the rulings in each of the underlying cases. In warning about "What Type Of Despotism Democratic Nations Have To Fear," de Tocqueville foresaw today's predicament:

> A constitution that would be republican at the head, and ultra-monarchical in all the other parts has always seemed to me an ephemeral monster. The vices of those who govern and the imbecility of the governed would not take long to lead them to ruin; and the people, tired of its representatives and of itself, would create freer institutions, or would soon return to stretching out at the feet of a single master.

2 ALEXIS DE TOCQUEVILLE, DEMOCRACY IN AMERICA 1260-61 (Eduardo Nolla ed., James T. Schleifer trans., Liberty Fund 2010) (1835) (Part IV, chapter 6).

Today, in the United States, we have no need or desire for a single master. Instead, we rely on lawyers, our fellows in the community who are their clients, and the courts to fulfill their respective independent roles under our Constitution's system of checks and balances. The district court judgments here preserve the ability of us all, with the aid of lawyers, to petition the courts for the preservation of our constitutional rights. The judgments must be affirmed.

13

Respectfully submitted,

/s/ *Sara Jane Shanahan*
Sara Jane Shanahan*
John C. La Liberte
Thomas Paul Gorman
Daniel S. Guenther
SHERIN AND LODGEN LLP
One Lincoln Street, 14th Floor
Boston, MA  02111
(617) 646-2000
sjshanahan@sherin.com
jclaliberte@sherin.com
tpgorman@sherin.com
dsguenther@sherin.com


*Counsel of Record

*Attorneys for* Amici Curiae *Pioneer New England Legal Foundation and Pacific Legal Foundation*

Dated:  April 2, 2026

14

4911-8511-2988

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 3,265 words excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ *Sara Jane Shanahan*
Sara Jane Shanahan

*Counsel for* Amici Curiae
*Pioneer New England Legal Foundation and Pacific Legal Foundation*

April 2, 2026

15

4911-8511-2988

**CERTIFICATE OF SERVICE**

Pursuant to D.C. Court of Appeals Rule 25(a)(2)(H), I hereby certify that on April 2, 2026, I filed the foregoing document with this Court's Appellate E-Filing System. Parties and participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Sara Jane Shanahan*
Sara Jane Shanahan

*Counsel for* Amici Curiae
*Pioneer New England Legal Foundation and Pacific Legal Foundation*

4911-8511-2988